```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

William Harold Vanover,          :

    Plaintiff,               :

  v.                            :         Case No. 2:16-cv-324

                                                      :
Commissioner of Social Security,     Magistrate Judge Kemp

    Defendant.               :

## OPINION AND ORDER

### I. Introduction

    Plaintiff, William Harold Vanover, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on August 9, 2013, and alleged that Plaintiff became disabled on June 1, 2009, which date was later amended to November 20, 2013.

    After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on September 15, 2015. In a decision dated October 21, 2015, the ALJ denied benefits. That became the Commissioner's final decision on February 10, 2016, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on June 20, 2016. Plaintiff filed a statement of specific errors on August 3, 2016. The Commissioner responded on September 22, 2016. Plaintiff filed a reply brief on October 6, 2016, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 53 years old as of the date of the first administrative hearing and who obtained a GED, testified as follows. His testimony begins at page 48 of the administrative

record.

At the time of the hearing, Plaintiff was living with his father. He had no income and no employment. He had difficulty walking up stairs in the parking garage on his way to the hearing.

Plaintiff's last job was painting vehicles at a body shop, but he did not work there long because he could not use the mask. He had worked in other body shops in the past. After leaving the body shop, he applied for other jobs, but believed that his past felony record prevented him from being hired.

In terms of why he could no longer work, Plaintiff said that his breathing difficulties and problems with standing and walking were his most significant limitations. Sitting also aggravated his back pain. If he overexerted himself, he could end up spending days in bed.

Plaintiff's doctors have told him that he has COPD. He had been prescribed nicotine patches to help him stop smoking but he still smoked two or three cigarettes each day. He also had moderate emphysema and used a rescue inhaler daily.

When asked about psychological issues, Plaintiff said that he had been diagnosed with PTSD and an anxiety disorder. He suffered from panic attacks and did not have many friends.

Plaintiff said he could walk well enough to shop for groceries. He did not use a cane. Walking made him short of breath and also caused foot pain. On a daily basis, he watched television and did some household chores like cooking, washing dishes, and doing laundry. He had some arthritis in his hands. He was most comfortable when lying on his side.

### III. The Medical Records

The pertinent medical records are found beginning at page 453 of the record. They can be summarized as follows. Because Plaintiff raises an issue only as to the ALJ's evaluation of

opinions from Dr. Harvey, the treating physician, the Court will focus its summary primarily upon Dr. Harvey's records.

The first set of records show that Plaintiff was seen by Dr. Harvey in 2009 and 2010 for treatment of diabetes. His disease was poorly controlled but the notes show that he took his medications inconsistently and also did not watch his diet closely. By 2012, he was experiencing foot ulcers and cellulitis resulting from diabetic neuropathy as well as some visual problems. He was still not taking his medication as directed and was not watching his diet, although there were times when he did better. A note dated October 10, 2012 reported that he was doing "quite well." (Tr. 504). He had had surgery to remove a skin lesion on his right leg in May, 2012, and that was healing nicely as of October of that year.

On October 16, 2014, Dr. Harvey completed a functional capacity assessment form. On it, he stated that Plaintiff could lift 20 pounds occasionally and less than ten pounds frequently, and could not stand, walk, and sit for a total of eight hours in a workday. He explained his conclusions by referring to Plaintiff's severe diabetic neuropathy affecting his lower extremities with chronic edema. Plaintiff's neuropathy also limited his sensation. Dr. Harvey thought that Plaintiff should avoid exposure to extremes of temperature and also to workplace hazards. (Tr. 882-89).

Treatment notes from 2014 showed that Plaintiff's symptoms included increased swelling and shortness of breath and that he was also treated for some burns on his shin. Some of his swelling was attributed to running out of Lasix. (Tr. 906). A note from 2013 indicated that Plaintiff was having a hard time standing on hard surfaces and that "Patient apparently is being required to work 40 hours a week for his outlet assistance and does not feel he is able to perform at this level due to diabetic

issues." (Tr. 918). A prior note said that he was "back to work regularly...." (Tr. 926).

On February 2, 2015, Dr. Harvey completed a second functional capacity report. This time, he concluded that Plaintiff could lift fifty pounds occasionally and 25 pounds frequently but could still not sit, stand, and walk for a total of eight hours. He did not limit Plaintiff's exposure to hazards, and he did not explain any of his findings. (Tr. 982-89). Notes from 2015 showed that Plaintiff continued to have ulceration and other problems with his legs and feet. He also burned himself while welding, and a note following his hospitalization for that problem said that he was, as of April 17, 2015, "back to work" and that he "wears tennis shoes to work as a welder." (Tr. 1235).

Two state agency physicians reviewed the records as well. Both Dr. Green and Dr. Torello concluded that Plaintiff could do a full range of light work. (Tr. 232, 243-44). The later of these two opinions is dated April 29, 2013.

### IV. The Vocational Testimony

Dr. Jerry Olsheski was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 69 of the administrative record.

Dr. Olsheski first testified about Plaintiff's past work. He said the job of automobile painter was medium and skilled, and the job of automotive painter helper was medium and semi-skilled. There were no transferable job skills.

Dr. Olsheski was next asked questions about a hypothetical person with Plaintiff's age, education, and experience who could work at the medium exertional level, and who could climb ramps and stairs frequently but climb ladders, ropes, and scaffolds only occasionally, who could stoop, kneel, crouch, and crawl occasionally, and who had to avoid various environmental factors

-4-

like heat, humidity, fumes, odors, dust, gases, and poor ventilation.  He testified that such a person could not do Plaintiff's past work.  However, that person could be employed as a hand packer, packing and filling machine operator, or assembler at the medium exertional level, and, at the light exertional level, could work as an assembler, inspector, or mail clerk.

Next, Dr. Olsheski was asked to assume that the hypothetical person also had some mental limitations, including the ability to perform only simple, routine, repetitive tasks and to interact only occasionally with the public.  He responded that such a person could still do the assembler, inspector, and mail clerk jobs.  In response to questions from Plaintiff's counsel, Dr. Olsheski agreed that someone who had to lie down for several hours during the workday could not be employed, nor could someone who would be off task for 20% of the time.  The same would be true for someone who missed two days or more of work per month.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 22-34 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  Second, she found that Plaintiff had not engaged in substantial gainful activity since June 1, 2009.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe physical impairments including chronic obstructive pulmonary disease, tobacco use, degenerative disc disease, a depressive disorder, and post-traumatic stress disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a reduced range of light work and that he could climb ramps and stairs frequently but climb ladders, ropes, and scaffolds only occasionally, could stoop, kneel, crouch, and crawl occasionally, and had to avoid various environmental factors like heat, humidity, fumes, odors, dust, gases, and poor ventilation. He also had the ability to perform only simple, routine, repetitive tasks and to interact only occasionally with the public. That being so, the ALJ concluded that Plaintiff could not perform his past relevant work. However, relying on the vocational testimony, the ALJ found that Plaintiff could do certain light unskilled jobs including assembler, inspector, and mail clerk, and that such jobs existed in significant numbers in the State economy. That finding is inconsistent with a determination of disability. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of errors, Plaintiff raises these issues: (1) the ALJ erred in substituting her own opinion for that of the consultive physical examiner, Dr. Ayesu-Offei; and (2) the ALJ's credibility determination is not supported by substantial evidence. These issues are evaluated under the following legal standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. The Consultative Opinion

Plaintiff first argues that the opinion from Dr. Ayesu-Offei suggested that Plaintiff would be limited to sedentary work, which is contrary to the ALJ's finding that he could do a limited range of light work. That finding, Plaintiff asserts, is not based on the opinion of any physician, and therefore must be the product of the ALJ's own lay opinion on a medical issue. Plaintiff also takes issue with the ALJ's interpretation of Dr. Ayesu-Offei's opinion and with the ALJ's determination that the opinion is not supported by the examination findings. The Commissioner responds that the ALJ had a substantial basis for the decision to give little weight to Dr. Ayesu-Offei's opinion and also acted within her discretion in determining that Plaintiff had the residual functional capacity to do light work.

In determining Plaintiff's residual functional capacity, the ALJ first noted that she considered the opinion evidence in

accordance with the applicable regulations and Social Security Rulings. (Tr. 27). The ALJ then determined that Plaintiff had not undergone any treatment for his back disorder and that there were no diagnostic tests showing any more than mild disc narrowing. (Tr. 28). Additionally, pulmonary function testing did not confirm severe shortness of breath and testing in 2015 was normal. (Tr. 28-29). Plaintiff also continued to smoke. After reviewing that evidence, the ALJ turned to her consideration of Dr. Ayesu-Offei's opinion.

As to that opinion, the ALJ noted, correctly, that the physical examination was essentially normal. Plaintiff's gait was also normal and he was not in respiratory distress. She gave the opinion only little weight because "a residual functional capacity of only sedentary work is inconsistent with the examiner's essentially normal exam findings" and because "the examiner did not rule out the ability to perform work at other occupational levels." (Tr. 29).

For the most part, these characterizations of Dr. Ayesu-Offei's report are accurate. There were no significant findings apart from a "little bit" of back discomfort on deep palpation and a complaint of pain with full flexion during straight leg-raising. Plaintiff could stand, squat a third of the way down, and tip-toe. Dr. Ayesu-Offei did not detect any atrophy or motor deficits. It is difficult to view these findings as supportive of an ability to do only sedentary work, and it is at least reasonable to conclude that they did not fully support the conclusions reached by Dr. Ayesu-Offei.

Contrary to Plaintiff's argument, an ALJ is permitted to discount the opinion of any examiner, including a consultative examiner, on the basis that the examiner's conclusions are not fully supported by the objective medical evidence. "Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Comm'r of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). "The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination." Gilmore v. Astrue, 2011 WL 2682990, *12 (M.D. Tenn. July 11, 2011), adopted and affirmed 2011 WL 3205394 (M.D. Tenn. July 28, 2011). See also SSR 06-03p (rescinded effective March 27, 2017), providing that in evaluating medical source opinion, an ALJ may consider "[t]he degree to which the [source] presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings."

The ALJ also commented that the opinion did not necessarily rule out work above the sedentary level. That is not the most reasonable interpretation of what Dr. Ayesu-Offei said, but, on the other hand, Dr. Ayesu-Offei clearly based his views not only on Plaintiff's physical exam but also on his "history" and his "presentation...." (Tr. 290). Plaintiff's credibility will be discussed in the next section, but given that the ALJ did not find him to be fully credible, that was an additional acceptable reason for giving less than full weight to Dr. Ayesu-Offei's opinion. Overall, the Court finds no error in the way in which the ALJ dealt with this particular opinion.

That does not completely address Plaintiff's first claim of error, because Plaintiff also asserts that the residual functional capacity contained in the ALJ's decision is not directly supported by any specific medical opinion. Again, while that is true, it is not grounds for reversal. An ALJ does not need to adopt the precise restrictions contained in any particular medical opinion when formulating a residual functional capacity finding.

"Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." Poe v. Comm'r of Social Security, 342 Fed.Appx. 149, 157 (6th Cir. Aug. 18, 2009). "The residual functional capacity determination is expressly reserved for the Commissioner." Ford v. Comm'r of Social Security, 114 Fed.Appx. 194, 198 (6th Cir. Nov. 10, 2004). As this Court has said, an "ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions," in arriving at a residual functional capacity finding. Davis v. Comm'r of Social Security, 2013 WL 6008697, *9 (S.D. Ohio Nov. 13, 2013), adopted and affirmed 2013 WL 6632657 (S.D. Ohio Dec. 17, 2013). Where there is enough evidence in the record to support the ALJ's conclusions as to various aspects of the residual functional capacity finding, those conclusions are not reversible simply because they are not drawn word for word from specific medical opinions in the record. Feigenbaum v. Comm'r of Social Security, 2014 WL 201483 (N.D. Ohio Jan. 17, 2014).

The Court concludes that, in this case, the ALJ's determination is supported by substantial evidence. As discussed, the findings from Dr. Ayesu-Offei's report can reasonably be interpreted as not supporting a restriction to sedentary work. The state agency physicians concluded that Plaintiff could do a wide range of light work, but the ALJ reasonably determined that those opinions were too optimistic because those physicians had not taken Plaintiff's subjective reports into account and did not adequately consider the combined effects of his impairments. (Tr. 30). Determining a residual functional capacity in between those two is not unreasonable. Consequently, there is nothing in Plaintiff's first claim of error which would justify a reversal of the ALJ's decision.

B. The Credibility Finding

In his second statement of error, Plaintiff argues that the reasons cited by the ALJ in deciding to give less than full credibility to Plaintiff's subjective report of disabling symptoms is not supported by substantial evidence. He argues that the fact that he continued to smoke after being diagnosed with COPD does not adversely reflect on his credibility, especially given his significant effort to reduce his smoking and the fact that smoking is an addiction. He then asserts that the other reasons cited by the ALJ are simply "minor inconsistencies" representing an attempt by the ALJ to "find any reason to make the facts fit her findings." Doc. 13, at 13. Lastly, he faults the ALJ for failing to explain how the objective medical evidence conflicted with his testimony. In response, the Commissioner argues that the medical evidence did not support Plaintiff's complaints and that the inconsistencies noted in the ALJ's decision were properly used to judge Plaintiff's credibility.

Evaluation of a claimant's subjective reports of disabling pain is subject to a two-part analysis. First, the Commissioner should determine if there is objective medical evidence which confirms the presence of disabling pain. If not (and there frequently is not, given that pain is difficult to measure or quantify, and is experienced differently even by persons with the same underlying condition), the Commissioner should determine if the claimant suffers from an objectively-established medical condition of sufficient severity to permit a reasonable inference to be drawn that the disabling pain actually exists. See Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986). This procedure is reflected in 20 C.F.R. §404.1529(a).

It is important to note that these inquiries are to be made separately, and that if there is objective evidence of a sufficiently severe underlying condition, a claimant can prove the existence of disabling pain due to that condition through

-11-

other evidence even if the medical evidence is not helpful in establishing the extent of the claimant's pain. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994). Thus, the Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). The Commissioner should also give appropriate weight to the opinion of a long-term treating physician as to whether the claimant is accurately reporting or exaggerating the extent to which disabling symptoms exist. Felisky, 35 F.3d at 1040. If the Commissioner summarily rejects the claimant's testimony concerning pain without considering these matters, reversal or remand may be warranted.

    The ALJ followed the correct analytical path here, concluding, first, that the objective medical evidence did not "substantiate the severity of the pain and symptoms and degree of functional limitations alleged by the claimant." (Tr. 27). Contrary to Plaintiff's assertion, the ALJ adequately explained this conclusion, noting that although the record documented that Plaintiff suffered from COPD, tobacco use, degenerative disc disease, a depressive disorder, and PTSD, the evidence as to each of these conditions failed to show that they were as severe as Plaintiff claimed. (Tr. 28-30). The findings cited by the ALJ provide substantial support for her conclusion that the medical evidence painted a different picture of the severity of Plaintiff's conditions than the way his testimony described them.

    The ALJ also considered other factors, as required by the applicable regulation and ruling (which, in this case, was SSR 96-7p). That ruling states that an ALJ must consider the "entire

case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record" and cautions that "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  The other evidence cited by the ALJ included statements made by Plaintiff that his inability to find work might not have been related to his claimed disability (Tr. 31), his inconsistent statements concerning why he lost one of his jobs, and the fact that he denied, at one point, having panic attacks.  Id.  These types of statements are not properly characterized as "minor" because they go to the very issue of why Plaintiff was not working and how severe his symptoms actually were.  The Court finds that these inconsistencies, which are present in the record, also support the ALJ's credibility finding.

It is important to keep in mind that "[i]t is ... for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  Rogers v. Comm'r of Social Security, 486 F.3d 234, 247 (6th Cir. 2007).  A claimant may "ask[ ] the Court to reweigh the evidence, give her the benefit of the doubt to the extent that these facts may weigh in her favor and then advance a different view;" but that would not be proper because "the Court is charged with determining the sufficiency of the evidence, not its weight."  Thomas v. Comm'r of Social Security, 2014 WL 2114567, *16 (N.D. Ohio May 20, 2014).  Under these deferential standards, the Court finds no error in the way in which the ALJ evaluated Plaintiff's credibility.

VII.  <u>Decision</u>

Based on the above discussion, Plaintiff's statement of errors (Doc. 13) is overruled.  The Court affirms the Commissioner's decision and directs the Clerk to enter judgment in favor of the Defendant.

/s/ Terence P. Kemp
United States Magistrate Judge